# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# TERRE HAUTE DIVISION

| | |
|---|---|
| GERALD R. FORSYTHE, | ) |
| | ) |
| Appellant/Cross-Appellee, | ) |
| | ) |
| vs. | ) Cause No. 2:13-cv-222-WTL-WGH |
| | ) |
| CHRISTOPHER MICHEAL YELEY, | ) |
| | ) |
| Appellee/Cross-Appellant. | ) |

## ENTRY ON JUDICIAL REVIEW

This cause is before the Court on an appeal by Gerald Forsythe and a cross-appeal by Christopher Yeley. Forsythe appeals the bankruptcy court's order discharging $1,500,000 of Yeley's debt. Yeley appeals the bankruptcy court's findings of fact and conclusions of law and its failure to consider his affirmative defenses. For the reasons set forth below, the bankruptcy court's judgment is **REVERSED**.

### I.     STANDARD

Under 28 U.S.C. § 158(a), the district courts of the United States have jurisdiction to hear appeals from final judgments, orders, and decrees of the bankruptcy courts. On appeal from the bankruptcy court, the district court may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree, or remand the case for further proceedings. Fed. R. Bankr. P. 8013. The district court conducts a de novo review of questions of law, *e.g.*, *Mungo v. Taylor*, 355 F.3d 969, 974 (7th Cir. 2004), but findings of fact are not set aside unless clearly erroneous and "due regard [must] be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm

conviction that a mistake has been committed. *E.g.*, *Kovacs v. United States*, 614 F.3d 666, 672 (7th Cir. 2010).

## II.  BACKGROUND

Forsythe is a businessman from Chicago, Illinois who knew Yeley, an agricultural salesman, though purchasing seed and chemicals for his farming property. On or about July 6, 2004, Forsythe and Yeley entered into an oral agreement to purchase stock for Cabela's Inc., a sporting goods company that was getting ready to complete its initial public offering ("IPO"). Forsythe agreed to provide the funds to purchase the stock, and Yeley purchased it through his brokerage account at Pershing, L.L.C. They agreed that at some time later the stock would be sold and they would share equally in the profits. They also agreed that Forsythe could demand the return of his funds at any time and that the funds would not be used for any purpose other than to purchase the stock.

Thereafter, Forsythe borrowed the funds from his company, Indeck Energy Services ("Indeck"), and sent a check payable to Pershing for three million dollars. On or about July 9, 2004, the check was deposited by Yeley into his account at Pershing. Shortly after he deposited the check, Yeley began transferring the funds to his own personal bank accounts, using, as the bankruptcy court described, Forsythe's "money as [if] it was [Yeley's] own piggy bank." Tr. at 211. In all, from September 14, 2004, through December 18, 2006, Yeley withdrew a total of $2,365,939.00 from the Pershing account. Yeley also used part of the money to buy stock in a different company and sold numerous shares of Cabela's stock at a loss.

Toward the end of 2006, Forsythe notified Yeley that he needed to repay his loan by the end of the year. On or about November 1, 2006, Forsythe requested that Yeley sell enough of the stock to repay him his original investment of three million dollars. Yeley tendered a check

payable to Forsythe drawn on an Old National Bank account in the amount of three million. He asked Forsythe to hold the check until sufficient funds were available; however, the funds never became available and the check was never honored.

In February 2007, Forsythe filed suit against Yeley, his former spouse, and Pershing in Illinois state court alleging breach of contract and conversion. On January 19, 2012, Yeley filed for Chapter 7 bankruptcy protection. The bankruptcy court conducted a trial on March 13, 2013, and entered its judgment in favor of Forsythe and against Yeley in the amount of $1,500,000 on May 8, 2013. While it denied Forsythe's objection to Yeley's discharge under 11 U.S.C § 727, it did find $1,500,000 of the debt to be non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2), (4), and (6). Both parties timely appealed.

### III. DISCUSSION

Forsythe appeals on two separate grounds. He first argues that the bankruptcy court erred under 11 U.S.C. § 523(a)(2)(A) in not compensating him for his entire three million dollar loss. His second argument is that the bankruptcy court erred by not denying the discharge pursuant to 11 U.S.C. §§ 727(a)(3), (4), and (5). Yeley also filed an appeal arguing that the bankruptcy court erred in its findings of fact and conclusions of law, as well as erred in not considering his affirmative defenses. Their arguments will be addressed, in turn, below.

#### A. Compensation for the Entire Loss

The bankruptcy court found that Forsythe met his burden pursuant to 11 U.S.C. §§ 523(a)(2), (4), and (6); however it found only $1,500,000 of the three million dollars to be non-dischargeable. The court did so due to the inherent risk Forsythe took when he made an investment in an IPO and the risk he took in making this agreement with Yeley, a twenty-nine-

3

year-old agricultural salesman. Yeley concurs with the bankruptcy court's decision;[1] however, Forsythe, citing *Cohen v. de la Cruz*, 523 U.S. 213 (1998) argues that it was an error for the bankruptcy court to reduce the amount of loss once fraud, under section 523(a)(2)(A), was established.

In *Cohen*, the Supreme Court held that "[t]he most straightforward reading of § 523(a)(2)(A) is that it prevents discharge of 'any debt' respecting 'money, property, services, or . . . credit' that the debtor has fraudulently obtained[.]" *Cohen*, 523 U.S. at 218 (citing *Field v. Mans*, 516 U.S. 59, 61, 64 (1995)). Forsythe, therefore, argues that the amount of debt Yeley fraudulently obtained should be discharged. While the bankruptcy judge found that "there was no fraud on the onset of the arrangement," Dkt. No. 4-32 at 12, it also correctly noted that "actual fraud is not limited to misrepresentation, but may encompass any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another." *Id.* at 14; *see also McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000) (noting that "actual fraud is broader than misrepresentation."). The Court agrees that Yeley "engage[d] in fraudulent conduct when he took the money from the Pershing, L.L.C. account and used it for personal expenses." *Id.* at 12. Accordingly, the Court agrees with Forsythe that the bankruptcy judge should have found any debt obtained by actual fraud pursuant to section 523(a)(2)(A) to be nondischargable.

In finding half of the three million dollars non-dischargeable, the Court recognizes that the bankruptcy judge was attempting to craft an equitable remedy, realizing that Forsythe may indeed bear some responsibility in doing "what [he] did with who [he] selected." Tr. at 213. However, the Court agrees with Forsythe that at least part of his loss was not attributable to the inherent riskiness of his investment, but rather to the mishandling and fraudulent conduct of

---

[1] He concurs to the extent this Court does not find any of his affirmative defenses to be warranted.

Yeley in "us[ing] the Pershing, L.L.C. account as his own personal piggy bank." Dkt. No. 4-32 at 11, ¶ 26. As noted above, from September 14, 2004, through December 18, 2006, Yeley withdrew a total of $2,365,939.00 from the Pershing account. *See* dkt. no. 4-32 at 3-4 (listing sixteen separate wire transfers in which Yeley withdrew sums of money from the Pershing account and transferred the amounts to his various personal bank accounts). Yet, the bankruptcy judge only discharged $1,500,000, and there is no explanation as to how he reached that figure or if this figure corresponds to the amount that he believes Yeley obtained by his fraudulent conduct.

Accordingly, this cause must be remanded for further proceedings. On remand, the bankruptcy judge should make a specific finding of fact as to what amount of money Yeley obtained by his fraudulent conduct. Once this finding is made, that specific amount should be found to be non-dischargeable. *See Cohen*, 523 U.S. at 218 ("Pursuant to section 523(a)(2)(A), "the share of money, property, etc., that is obtained by fraud gives rise to a nondischargeable debt."). Judgment should then be entered in favor of Forsythe and against Yeley for that specific amount.

### B. Discharge of Debt Pursuant to 11 U.S.C § 727

Filing for Chapter 7 bankruptcy gives "an honest but unfortunate debtor" a "fresh start." *Stamat v. Neary*, 635 F.3d 974, 978 (7th Cir. 2011). The bankruptcy code, therefore, grants the debtor a discharge under most circumstances; however, it also "lists several exceptions that deny the privilege to dishonest debtors." *Id*. Forsythe argued below that three of those exceptions under section 727 apply to this case. The bankruptcy court disagreed, noting "We don't have any 727s here. These aren't the best pleadings that were filed, but there was no overt effort in the petitions to mislead anybody or lead them down the road that they shouldn't go." Tr. at 211.

5

Forsythe thus appeals this determination. The Court turns its analysis to section 727, keeping in mind that "[i]n bankruptcy, exceptions to discharge are to be construed strictly against a creditor and liberally in favor of the debtor." *Stamat*, 635 F.3d at 979.

### 1. False Oath

Forsythe first argues that Yeley should not be granted a discharge pursuant to 11 U.S.C. § 727(a)(4). This section provides that no discharge should be granted if

> the debtor knowingly and fraudulently, in or in connection with the case—made a false oath or account; presented or used a false claim; gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs[.]

In order for this section to apply, Forsythe must prove: "(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case." *Stamat*, 635 F.3d at 978.

Essentially, on appeal, Forsythe argues that Yeley provided conflicting testimony, continuously changed his story, and therefore, has "zero credibility." Forsythe Brief at 33. However, this directly contradicts what the bankruptcy judge, who personally witnessed the testimony, observed:

> And I think that everybody here that dad [sic] tried to tell the truth. I mean, I don't know that I have anybody that was a—was not telling the truth. The issue of credibility, look at the amount of paper we have here. Look at the amount of lawyer time. People see things all from a little different angle.

Tr. at 213. "Whether a debtor made a false oath within the meaning of § 727(a)(4) is a question of fact," *In re Lindemann*, 375 B.R. 450, 469 (Bankr. N.D. Ill. 2007), and deference is given to trial judges' credibility determinations. *See Carnes Co. v. Stone Creek Mechanical, Inc.*, 412

F.3d 845 (7th Cir. 2005) ("We also afford great deference to the trial court's assessment of witness credibility; indeed, we have stated that a trial court's credibility determination 'can virtually never amount to clear error.'") (quoting *Lac Du Flambeau v. Stop Treaty Abuse-Wisconsin, Inc.*, 41 F.3d 1190, 1194 (7th Cir. 1994)). The bankruptcy judge was clearly in a better position to judge Yeley's credibility. Accordingly, the Court does not find any clear error in regard to its denial of Forsythe's section 727(a)(4) objection.

*2. Failure to Maintain Adequate Books and Records*

Forsythe next argues that Yeley should have been denied a discharge pursuant to 11 U.S.C. § 727(a)(3). This section provides that no discharge should be granted if "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]" Forsythe argues that Yeley: 1) failed to file tax returns; 2) failed to disclose interests in businesses; 3) failed to provide documentation of his financial affairs and refused to answer discovery requests; and 4) cannot document the dissipation of large sums of money.[2] The Seventh Circuit has stated with regard to this section that "[r]ecords need not be kept in any special manner, nor is there any rigid standard of perfection in record-keeping mandated by § 727(a)(3)." *Matter of Juzwiak*, 89 F.3d 424, 428 (7th Cir. 1996). The Court sees no error committed by the bankruptcy judge in concluding that Forsythe's objection pursuant to this section should be denied. The bankruptcy judge noted that "[t]hese aren't the best pleadings that were filed, but there was no overt effort in the petitions to mislead anybody or lead them down the road that they shouldn't go." Tr. at 211. Accordingly, the Court sees no reason to

---

[2] This argument is better addressed with Forsythe's objection to discharge pursuant to section 727(a)(5).

7

disrupt the bankruptcy judge's conclusion that discharge was not warranted pursuant to section 727(a)(3).

### 3. Failure to Explain the Loss

Finally, Forsythe argues that Yeley should not be granted a discharge pursuant to 11 U.S.C. § 727(a)(5) which provides that no discharge should be granted if "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities[.]" Forsythe correctly explains the burden of proof in his brief:

> First the objecting party has the burden of proving that the debtor at one time owned substantial and identifiable assets that are no longer available to his creditors. Second, if the party objecting to discharge meets this burden, then the burden shifts to the debtor to provide a satisfactory explanation for the loss.

Forsythe Brief at 30. The bankruptcy judge found that Forsythe "did not meet the burden of proof in showing that the discharge should be denied pursuant to Section 727(a)[(5)]." Dkt. No. 4-32 at 12. Forsythe glosses over his burden in his brief, arguing instead that "Yeley has failed or refused to explain what he did with the $3,000,000.00." Forsythe Brief at 23.

The Court is a bit perplexed by Forsythe's argument in that he only argues that Yeley has failed to account for the three million dollars *that belonged to Forsythe*. In other words, Forsythe does not argue that Yeley owned *other* substantial assets for which he failed to explain their current unavailability. True that Yeley funneled a large portion of Forsythe's three million dollars into his personal bank accounts, but this money was never his to "own," and further, this fraudulent conduct has already resulted in these amounts being non-dischargeable. The Court, therefore, does not find that Forsythe has met his burden to show that Yeley owned *other* substantial and identifiable assets that are now no longer available to pay back the debt he owes to Forsythe. On appeal, Forsythe only argues that Yeley did not explain what he did with the

three million dollars that belonged to Forsythe. Accordingly, the Court finds no error with the bankruptcy court's denial of Forsythe's section 727(a)(5) objection.

## C. Findings of Fact and Conclusions of Law

Turning now to the merits of Yeley's appeal, his first argument is that the findings of fact and conclusions of law were made in error—he argues that the written findings of fact and conclusions of law, taken from Forsythe's counsel, are contrary to what the bankruptcy court announced orally from the bench and relied on in making its determination that "[w]e don't have any 727s here." Tr. at 211. Specifically, Yeley takes issue with Findings of Fact numbers 18-25. As Yeley notes, these allege various "material and false actions" that Yeley committed that may justify a discharge pursuant to section 727. Yeley Brief at 19. Inasmuch as the Court has agreed with the bankruptcy court that non-dischargeability pursuant to sections 727(a)(3), (4), and (5) is not warranted in this case, the Court need not further address Yeley's argument.

## D. Yeley's Affirmative Defenses

Finally, Yeley argues that the bankruptcy court erred in its failure to address his affirmative defenses. For the reasons explained below, the Court finds that none of Yeley's defenses are applicable to this case, and accordingly, the bankruptcy court did not err in denying his affirmative defenses.

### 1. The Statute of Frauds

Yeley first argues that under Illinois law, the statute of frauds bars enforcement of the oral agreement entered into by Forsythe and himself because it was not to be completed in less than a year. *See* 740 Ill. Comp. Stat. 80/1 (2013). Under Illinois law, "[t]he test for determining whether the statute of frauds applies to a contract is whether the contract is capable of being performed within one year of its formation, not whether such occurrence is likely." *Robinson v.*

9

*BDO Seidman, LLP*, 854 N.E.2d 767, 772 (Ill. 2006). Certainly, Forsythe's promise to pay money and Yeley's contemporaneous promise to purchase Cabela's stock was capable of being performed within one year. The Court, therefore, finds no error in the bankruptcy's court conclusion that this affirmative defense was inapplicable.[3]

## 2. Lack of Standing

Yeley next argues that Forsythe lacks standing to challenge the dischargeability of the claim because "he is not the proper party to seek recovery of the funds[.]" Yeley Brief at 29. He argues this because "the evidence at trial demonstrated conclusively that the investment in this case was made by Indeck Energy." *Id*. In order "[t]o have standing to object to a bankruptcy order, a person must have a pecuniary interest in the outcome of the bankruptcy proceedings. Only those persons affected pecuniarily by a bankruptcy order have standing to appeal that order." *In re Cult Awareness Network, Inc.*, 151 F.3d 605, 607 (7th Cir. 1998). The Court agrees with the bankruptcy court that Forsythe has standing to challenge the order as he has a pecuniary interest—three million dollars—that is affected by the order.

While true that the check sent to Yeley was drawn on Indeck's account, it is clear that Forsythe obtained a loan from Indeck, which he paid back at the end of 2006. *See* Tr. at 164-65. Accordingly, he is now the proper party whose pecuniary interest is at stake. Further, Yeley wrote a three million dollar refund check payable to *Forsythe* at the end of 2006, listed Forsythe as a creditor on his bankruptcy filings, and, at trial, argued that part of the reason he handled the money in the way he did was because he had a right to perform a setoff against *Forsythe*. This

---

[3] Forsythe also directs the Court to two other explanations why the statute of frauds does not preclude enforcement of the oral contract: (1) the defense may not be asserted to perpetuate a fraud; and (2) partial performance bars application of the defense. The Court notes that both of these reasons are additional support for its conclusion that the statute of frauds defense is inapplicable to this case.

belies any claim now made by Yeley that Forsythe has no standing to challenge the dischargeability order.

### 3. Unclean Hands, Illegality, and Estoppel

With respect to his illegality defense, Yeley makes a general allegation that "one interpretation of the evidence in this case would be that Forsythe or Indeck was precluded by law or securities regulations from investing in an IPO and this explained secrecy [sic] which Debtor was asked to keep." Yeley Brief at 30. This is pure speculation which does not satisfy Yeley's burden of proof. *See e.g.*, *Employer Ins. of Wausau v. Titan Intern., Inc.*, 400 F.3d 486, 490 (7th Cir. 2005) (noting that illegality is an affirmative defense, "and of course defendants have the burden of proving affirmative defenses."). Yeley certainly has not produced any evidence supporting this allegation. *See* Yeley Brief at 30 ("The evidence was presented and denied by Forsythe.").

Finally, Yeley argues that had Forsythe taken "a more active, visible role in such a large transaction[,]" the outcome would have been different. Yeley Brief at 30. It appears that Yeley is arguing that it is Forsythe's fault he lost his money because he did not adequately supervise Yeley. Therefore, Forsythe has "unclean hands" and/or is estopped from asserting his claim for nondischargeability. However, as Yeley himself noted in a motion made with the bankruptcy court below, "it will be necessary to introduce proof of the factual basis which he has alleged for these defenses[.]" Dkt. No. 4-23 at 7. Yeley has failed to direct the court to any factual—or legal—support in his appeal. Simply alleging that Forsythe could have done more is certainly not enough to warrant a total preclusion from recovery. Accordingly, the Court finds no error in the bankruptcy court's determination that Yeley failed to meet his burden of proof on his illegality, unclean hands, and estoppel defenses.

## IV. CONCLUSION

The Bankruptcy Court's judgment is hereby **REVERSED** and this cause is **REMANDED** to the Bankruptcy Court such that it can make a specific finding of fact in regard to the actual amount of money that Yeley fraudulently obtained. Judgment should then be entered in favor of Forsythe and against Yeley for that specific amount pursuant to section 523(a)(2)(A).

SO ORDERED: 03/20/2014

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication